REI, Appellant,

v.

RHODES, Cty. Aud., Appellee.

[Cite as *Rei v. Rhodes* (1995), 108 Ohio App.3d 225.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–940752.

Decided Dec. 29, 1995.

Schwartz, Manes & Ruby and *William B. Singer*, for appellant.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Kathleen Bailey*, Assistant Prosecuting Attorney, for appellee.

*Per Curiam.*

In this appeal, the appellant, Mark A. Rei, challenges the decision of the trial court affirming the order of the State Personnel Board of Review ("SPBR") adopting the report and recommendation of the administrative law judge that Rei's removal from the position of Hamilton County Estate Tax Supervisor be upheld. Rei asserts five assignments of error challenging the trial court's affirmance of the administrative law judge's decision on both procedural and substantive grounds. We find none of these assignments to have merit and thus affirm the trial court.

I

In his first assignment of error, Rei asserts that the trial court erred by considering evidence outside the scope of the charges of misconduct specified in the order of removal. Specifically, Rei argues that, notwithstanding that the case against him was confined to his alleged mishandling of the returns and checks in two particular matters (the Topping and Leighton estates), the administrative law judge considered other possible improprieties not specifically alleged in the charging instrument: his practice of preauditing estate tax returns and his failure to observe the twenty-four-hour deposit rule of R.C. 9.38.

There was evidence presented at the hearing before the administrative law judge that the practice of preauditing estate tax returns was not permitted by the county auditor or the Ohio Department of Taxation ("ODT"), and that Rei was advised of this and told to discontinue the practice. Rei contends, however, that this practice, in which he freely admits engaging, broke no rules and was authorized by R.C. 5731.26(A). As stated by Rei, there is "statutory authorization for the pre-audit practice in Hamilton County, whether or not any employees of the ODT, or the tax commissioner himself, like it." This practice involved Rei conducting the preaudits, making the corrections, and then putting the corrected returns and checks in the center drawer of his desk while awaiting a response from the attorney or estate representative. According to Rei, his insistence upon performing such preaudits was the county auditor's "ultimate justification" for removing him and "sparked the indignation" of the administrative law judge, who then improperly used it as additional grounds supporting his removal.

The auditor responds, and we agree, that a fair reading of the administrative law judge's report discloses that the discussion of Rei's practice of performing preaudits was meant only to elucidate the circumstances behind, and provide some explanation for, his alleged mishandling of the returns and checks of the Topping and Leighton estates. As Rei concedes, he was aware that it was the mishandling of these two checks which constituted the "essential charges" against him. As the evidence showed, these two checks were not processed for ten and six months, respectively.

That the administrative law judge limited his consideration of the evidence to Rei's handling of these two estates is clear from his report, in which he states:

"The 124.34 order specifically refers to a ten-month delay between the receipt of a pay-in and the proper accounting for the pay-in, and the filing of estate tax returns. I view these charges, coupled with the testimony regarding the inquiry at the pre-disciplinary hearing, to be sufficient to alert Mr. Rei to the fact that the focus of the investigation was his actions regarding the Topping and the

Leighton Estates. Furthermore, I have considered, in reaching my decision, only evidence relative to those two estates."

Moreover, the administrative law judge noted that, with regard to both the Topping and Leighton estates, "the delay extended beyond the date that a second check was tendered in payment as requested by Mr. Rei" following Rei's preaudit corrections. In other words, aside from the practice of preauditing returns, the administrative law judge found "inexcusable" the fact that Rei failed to timely process the checks in question. As noted by the administrative law judge, "[s]uch delays harm the public in that they disrupt the normal flow of revenue, and present a potential harm to the estate and its fiduciaries because of the possible penalties for late filings."

With respect to the twenty-four-hour deposit rule, Rei describes this as "[a]nother red herring" used to justify his removal. The "red herring" is codified in R.C. 9.38, which provides:

"A public official other than a state officer, employee or agent shall deposit all public moneys received by him with the treasurer of the public office or properly designated depository once every twenty-four consecutive hours."

Although there was evidence of record that Rei was aware of this rule, he nonetheless denigrates it because it is not contained in either ODT's County Auditor Estate Tax Procedures Manual or any manual promulgated by the Hamilton County Auditor, and because it is contrary to "the way he had always performed during his years of service as Estate Tax Supervisor." Moreover, he argues that there was nothing in the charging instrument which cited R.C. 9.38 or mentioned a duty to deposit checks within twenty-four hours.

Again, we find Rei's argument noteworthy in its failure to grasp the overall thrust of the charges against him and the administrative law judge's resolution of those charges. This is not a case involving a mere technical violation of the twenty-four-hour rule. The delays involved in the processing of the Topping and Leighton estates were not matters of hours or days, but several months, in one case nearly a year. As noted by the administrative law judge, it is "inexcusable" for an official of the county auditor to "accept returns and payments and simply not process these for periods *of up to ten months.*" (Emphasis added.) Clearly the charging instrument was sufficient to detail these charges; it is Rei's understanding of that instrument, not the instrument itself, which is flawed.

Rei's first assignment of error is overruled.

## II

In his second assignment of error, Rei asserts that the trial court erred by concurring with the administrative law judge's "unlawful shifting of the burden of

proof" to Rei. Specifically, Rei asserts that the administrative law judge improperly put the onus on him to explain what happened to the Topping and Leighton checks that caused them to be missing for ten and six months, respectively. Rei contends that he is being held vicariously responsible for the mishandling of the two checks, and that "if anyone should be held vicariously responsible, it is the county auditor," whom he accuses of "firing a helpless subordinate amid self-serving press coverage."

In the third assignment of error, Rei challenges generally the quantum of evidence supporting his removal. Given the overlap between the second and third assignments of error, we will discuss both together.

■ Initially, we note that the administrative law judge's statements during the hearing do not support Rei's contention that he was improperly put to the burden of proving himself innocent. The administrative law judge stated numerous times during the proceedings that he considered it the auditor's burden to prove the charges against Rei by a preponderance of the evidence. Moreover, at the close of the auditor's case the administrative law judge specifically observed that Rei was under no obligation to go forward with any evidence.

Rei argues that the decision of the SPBR adopting the administrative law judge's report was not supported by the requisite quantum of proof, and, therefore, the court of common pleas erred by affirming it, because "there is absolutely no evidence that [Rei] delayed, either deliberately or negligently, the filing and deposition of the returns and checks in the Topping and Leighton estates beyond the time that was necessary to correct the errors he discovered in the returns."

The auditor remonstrates, and we agree, that there was sufficient circumstantial evidence to support the auditor's case against Rei. With respect to the Leighton estate return and check, there was evidence that Rei received the return and original check in November 1991. Rei thereafter performed a preaudit of the return, made notes on the return, and then placed it in his desk drawer. The evidence further established that Rei contacted the attorney in charge of the estate and informed him that a required schedule J was missing, and that there was an overpayment of approximately $18. Within days, the attorney supplied the missing schedule and requested a refund. Thereafter, however, some sixty days apart, the attorney received two letters from ODT informing him, first, that no return had yet been filed and, second, that no payment had been received. The attorney then issued a stop payment and submitted a second check. Subsequently, however, the attorney received another communication from ODT that the second check had not been received. Finally, not until June 1992, just as a third check was about to be issued, the attorney

received a communication from ODT that the second check had been found and deposited.

According to the evidence, Rei, in response to several phone calls from ODT, had found the second Leighton check. Rei testified that he found the check in the treasurer's office and he forwarded it within several days to ODT. The original, "lost" Leighton check, however, was found in Rei's desk on July 24, 1992, together with other checks dating from July 21, 1991 to July 18, 1992.

The Topping estate return and check were originally filed on May 24, 1991. Rei performed a preaudit and found some additional tax owing. The return and check (the latter amounting to nearly $100,000) were missing for approximately ten months. After multiple inquiries by the attorney in charge of the estate and by ODT, the check was found and deposited. At the hearing, Rei testified that he had no recollection of when, where, and how the estate check was found. The Topping estate return, however, was found in Rei's desk drawer in July 1992.

The administrative law judge determined that the evidence of record was sufficient to demonstrate that Rei, the person who initially accepted the returns and checks, thereafter mishandled both by failing to process them in the normal course of business, thus causing "delays, disruptions, concerns, and potential revenue loss." He further found that Rei's mishandling of these two estates resulted directly from his practice of preauditing the returns notwithstanding the fact that this practice was disapproved by ODT. Finally, the administrative law judge rejected any suggestion in Rei's testimony that he had been the victim of an intraoffice conspiracy to orchestrate his removal.

The trial court was obligated to affirm the SPBR's decision so long as it was supported by reliable, probative, and substantial evidence. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265; *Ossenbeck v. Hamilton Cty. Aud.* (1994), 93 Ohio App.3d 204, 206, 638 N.E.2d 120, 121. As this court noted in *Ossenbeck*, the trial court's hybrid review of law and fact allows it to substitute its judgment for that of the agency; however, the trial court must generally defer to the findings of the administrative body, as factfinder, in the resolution of evidentiary conflicts. *Id.* at 206, 638 N.E.2d at 121.

Moreover, appellate courts are further limited to a determination of whether the trial court abused its discretion in reaching its judgment. *Id.;* see, also, *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.* (1992), 63 Ohio St.3d 705, 590 N.E.2d 1240; *Hawkins v. Marion Corr. Inst.* (1990), 62 Ohio App.3d 863, 870, 577 N.E.2d 720, 724 (citing *Angelkovski v. Buckeye Potato Chips Co.* [1983], 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280). An abuse of discretion is not simply an error of law or judgment, but

requires, rather, that we find the trial court's action marked by an unreasonable, arbitrary, or unconscionable attitude. *Yancy v. Ohio Dept. of Human Serv.* (Feb. 23, 1994), Hamilton App. No. C–920625, 1994 WL 52388, unreported (citing *Angelkovski, supra* ).

■ We hold that the trial court's affirmance of the agency's determination was not an abuse of discretion because there was sufficient circumstantial evidence to support the conclusion that Rei, as the person who initially accepted the Leighton and Topping estate returns and checks, thereafter mishandled them by failing to process them in the normal course of business. Rei's second and third assignments of error are, therefore, overruled.

### III

In his fourth assignment of error, Rei asserts that the trial court erred by failing to suppress evidence obtained from the search of his desk on July 24, 1992. Relying on *O'Connor v. Ortega* (1987), 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714, Rei argues that he was entitled to a reasonable expectation of privacy with respect to the contents of his desk sufficient to require the auditor's office to obtain a warrant before conducting its search.

■ The record is replete with evidence that Rei's desk was freely accessible to employees in the auditor's office throughout the day, when he was on vacation, and when he was out to lunch. As counsel for Rei conceded during oral argument, a large part of Rei's defense with respect to the checks found in his desk rested upon his claim that he did not have sole dominion over it. Hence, clearly, Rei did not have a reasonable expectation of privacy with respect to his desk. His fourth assignment of error is, therefore, overruled.

### IV

In his fifth assignment of error, Rei asserts that the trial court erred in affirming his removal from his position as Estate Tax Supervisor, even if it is assumed that he was responsible for the "temporary loss" of the Leighton and Topping estate tax returns and checks. Specifically, Rei asserts that his removal was an unreasonable, arbitrary, and unconscionable response to the charges against him. According to Rei, he should be reinstated "with apologies and commendations."

■ The administrative law judge, as noted, found Rei's actions "inexcusable." He found them, moreover, to be direct consequence of Rei's insistence upon performing preaudits when the procedure had been disapproved by ODT. According to the administrative law judge, Rei's "singular decision" that his course of doing business was better than that recommended to him by his superiors

resulted in "delays, disruptions, concerns, and potential revenue loss." Consequently, he concurred with the auditor's decision that Rei's actions constituted "such a grievous breach of trust as to warrant removal, even for a first time offense." As stated by the administrative law judge:

"For an official in the Auditor's Office to be unable to explain why he delayed filing a tax return and/or depositing a check representing the payment of State taxes for a period of time in excess of ten months in one case and six months in another, is simply inexcusable."

The trial court affirmed this conclusion. Without disparaging Rei's years of public service, so do we. Accordingly, the decision of the trial court is affirmed.

*Judgment affirmed.*

GORMAN, P.J., MARIANNA BROWN BETTMAN and PAINTER, JJ., concur.